**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

KATHRYN BANASHAK, )
on behalf of Plaintiff and the class members )
described below, )
)
Plaintiff, )
)
vs. )
)
ASHLEY BLAKE COLLINS; )
RED CYPRESS GROUP, doing business )
as VALLEY SERVICING and APEX )
SERVICING; )
and JOHN DOES 1-20, )
)
Defendants. )

**COMPLAINT – CLASS ACTION**

1. Plaintiff, Kathryn Banashak, brings this action to secure redress from attempts to collect predatory and unlawful loans. The collection operation is purportedly conducted by subsidiaries of the Wakpamni Lake Community Corporation, a corporation organized under the law of the Oglala Sioux Tribe. In fact, the collection operation is owned and conducted by Defendant (Mr. ) Ashley Blake Collins out of a location in Arizona. Other parties involved in collecting the loans are named as John Does 1-20.

**JURISDICTION AND VENUE**

2. The Court has subject matter jurisdiction under 15 U.S.C. §1692k (Fair Debt Collection Practices Act) and 28 U.S.C. §1367. Jurisdiction may also exist under 28 U.S.C. §1332(d).

3. This Court has personal jurisdiction over Defendants because they directed collection communications into Indiana.

4. Venue is proper because the collection activity impacted Plaintiff in Indiana.

5. Article III is satisfied because Defendants illegally communicated with Plaintiff's employer and made representations to the employer that Plaintiff owed money she did not in fact owe.

## PARTIES

### Plaintiff

6. Plaintiff Kathryn Banashak is a citizen of Indiana and a resident of Hobart, Indiana.

### Defendants

7. Defendant Red Cypress Group d/b/a Valley Servicing and Apex Servicing purports to be an entity organized under the law of the Oglala Sioux Tribe and owned by the Wakpamni Lake Community Corporation ("WLCC").

8. Valley Servicing has a website on which it states that "Valley Servicing is a Native American owned business operated by Wakpamni Lake Community Corporation an Oglala Sioux Tribe of the Pine Ridge Indian Reservation, a federally recognized and sovereign nation located in the United States. Valley Servicing abides by all applicable federal laws and regulations and tribal law as established by the Oglala Sioux Tribe of the Pine Ridge Indian Reservation." (Exhibit A)

9. Valley Servicing also states on its website, "We specialize in servicing voluntary and revocable assignment of earnings authorized by borrowers in accordance with applicable federal and tribal laws." (Exhibit A)

10. This is the principal business of Red Cypress Group d/b/a Valley Servicing and Apex Servicing.

11. Red Cypress Group d/b/a Valley Servicing uses or has used the following addresses:

a. P.O. Box 637, 333 South Main Street, Blanding, UT 84511 (Exhibit A);

b. 3651 E. Baseline Rd., Suite E-130, Gilbert AZ 85234 (Exhibit B).

c. P. O. Box 31690, Mesa, AZ 85275.

d. P. O. Box 1427, Mesa, AZ 85211.

12. None of these addresses are located anywhere near the Pine Ridge Indian Reservation, which is in southwest South Dakota, bordering Nebraska.

13. The actual entity conducting the collection operations is Defendant Red Cypress Group, which does business as Valley Servicing and Apex Servicing.

14. Red Cypress Group d/b/a Valley Servicing and Apex Servicing is engaged in the principal business of collecting high-interest (100% and more) loans made to consumers in Indiana and elsewhere over the Internet.

15. Red Cypress Group d/b/a Valley Servicing and Apex Servicing receives such loans only after the consumers have defaulted under the terms of the loans.

16. Red Cypress Group d/b/a Valley Servicing and Apex Servicing collects debts by communicating with the debtors' employers, as set forth below.

17. Red Cypress Group d/b/a Valley Servicing and Apex Servicing sends demands on wage assignments to employers, using the United States Mail and interstate wires for that purpose.

18. Red Cypress Group d/b/a Valley Servicing and Apex Servicing is therefore a debt collector as defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6).

19. The person authorized to remove mail from Post Office Box 31690, Mesa, Arizona 85275 is Defendant Ashley Blake Collins d/b/a First Loan. (Exhibit C)

20. Defendant Ashley Blake Collins may be found at 20664 E. Ivy Ln., Queen Creek, AZ 85142-0055.

21. Defendant Ashley Blake Collins manages Red Cypress Group, Apex Servicing and Valley Servicing. He has used the titles Vice President of Operations and "director of operations."

22. Many delinquent high-interest loans made over the Internet are collected by Red Cypress Group d/b/a Valley Servicing and Apex Servicing.

23. John Does 1-20 are other natural or artificial persons who participated in the collection scheme complained of herein

**FACTS**

24. On or about May 12, 2026 a "wage assignment demand notice" was sent in the name of Valley Servicing to Plaintiff's employer. (Exhibit D)

25. The "wage assignment demand notice" sought to collect a loan made to Plaintiff over the internet at over 100%, on which Plaintiff had ceased payments.

26. The loan was not legally enforceable.

27. The "wage assignment demand notice" was a standard form.

28. Another example of the "wage assignment demand notice" is in Exhibit E.

29. The "wage assignment demand notice" is a communication to a consumer's employer that the consumer has defaulted on a purportedly lawful debt.

30. The "wage assignment demand notice" states that the consumer owes money, when this is not true because the loan is not enforceable.

31. Defendant Collins is personally familiar with and authorized and approved and directed use of the "wage assignment demand notices."

32. At the time the notice was sent to Plaintiff, Collins had been sued for use of such notices in *Fair v. Red Cypress Group*, 23cv1006 (M.D.Fla.), *Elder v. Collins,* 8:17cv1807 (D.Md.); *Wiley v.*

*Jardine,* 3:17cv11 (E.D.Va.); and *Jackson v. Collins,* 1:24cv1132 (S.D.Ind.).

33. Defendants had also been warned of the illegality of their conduct by the Washington Department of Financial Institutions (Exhibit F).

**INDIANA REGULATION OF WAGE ASSIGNMENTS**

34. Indiana defines a "wage broker" as follows:

Ind. Code § 22-2-7-1. "Wage broker" defined.

(a) Any person, company, corporation, limited liability company, or association loaning money directly or indirectly to any employee or wage earner, except the employer of the employee, upon the security of or in consideration of any assignment of the wages or salary of such employee or wage earner shall be defined and held to be a wage broker and subject to the provisions of this chapter.

(b) A direct deposit made by electronic funds transfer or other method to an employee's account in a financial institution as agreed to by the employer and the employee does not constitute an assignment of wages subject to this chapter.

(c) An assignment or pledge of, or a grant of a security interest in, a contractual right of a person to receive commissions payable directly or indirectly by an insurer (as defined in IC 27-1-2-3) does not constitute an assignment of wages subject to this chapter.

35. Under Ind. Code § 2-2-7-2, "Requisites of assignments," a wage assignment is only valid for 30 days:

> No assignment of his or her wages or salary by any employee or wage earner to any wage broker or any other person for his benefit shall be valid or enforceable, nor shall any employer or debtor recognize or honor such assignment for any purpose whatever, unless it be for a fixed and definite part of the wages or salary earned or to be earned during a period not exceeding thirty (30) days immediately following the date of the assignment. Any assignment which shall be post-dated or dated on any other date than that of its actual execution shall be void and of no effect for any purpose whatever.

36. Under Ind. Code § 22-2-7-3, "Computation and limitation on interest or other loan finance charges," the rate of interest on a loan with respect to which a wage assignment is taken is limited to 8%:

> No wage broker shall ask, demand or receive, either as compensation or interest, or in any

other manner, directly or indirectly, any compensation or interest for the use of money advanced or loaned by him to any employee or wage earner in excess of the rate of eight per cent (8%) per year, and said compensation or rate of interest shall be computed upon the amount actually advanced to and received by the borrower, and no commission, compensation or charges in addition to the interest above named shall be asked, demanded or received by said wage broker or any other person for making or securing said advancement or loan.

37. Under Ind. Code § 22-2-7-5, "Notice of assignment":

No assignment of wages shall be valid or enforceable unless notice in writing of the same, accompanied by a copy of the assignment, shall be given to the employer or debtor within ten (10) days from the date of its execution.

38. Under Ind. Code § 22-2-7-8, "Void loans — Forfeiture,"

Any note, bill, or other evidence of indebtedness and any assignment of wages or salary given to or received by any wage broker or any other person in violation of any of the provisions of this chapter shall be null and void and of no effect; and upon conviction, any and all moneys advanced or loaned by said wage broker in violation of any of the provisions of this chapter and all interest thereon shall be forfeited.

39. None of the wage assignments enforced by Defendants complied with the requirements of Ind. Code §§ 22-2-7-2, -3 and -5.

40. All of the wage assignments enforced by Defendants were made with respect to loans exceeding 8%.

**COUNT I - FDCPA**

41. Plaintiff incorporates paragraphs 1-40.

42. This claim is against all Defendants.

43. The "wage assignment demand notice" is an unlawful third party communication, in violation of 15 U.S.C. § 1692c.

44. Section 1692c provides:

§ 1692c. Communication in connection with debt collection

. . . (b) Communication with third parties. Except as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector, or the

> express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. . . .

45. The "wage assignment demand notice" falsely represents that (a) it is a lawful means of collection and (b) the consumer owes money.

46. Because the wage assignments and underlying loans did not comply with Ind. Code §§ 22-2-7-2, -3 and -5, the loans and wage assignments were void.

47. The statements in the wage assignments that (a) it is a lawful means of collection and (b) the consumer owes money are untrue and violate 15 U.S.C. §§ 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), 1692f and 1692f(1).

48. Section 1692e provides:

> False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

49. Section 1692f provides:

> Unfair practices

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

**CLASS ALLEGATIONS**

50. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

51. The class consists of (a) all individuals with Indiana addresses (b) who were the subject of a "wage assignment demand notice" (c) sent by Red Cypress Group, Valley Servicing, or Apex Servicing (d) on or after a date one year before the filing of this action.

52. Plaintiff may alter the class definition to conform to developments in the case and discovery.

53. The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 100 class members.

54. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether the "wage assignment demand notices" are unlawful;

b. Whether the wage assignments are unlawful;

c. Whether the loans in connection with which the wage assignments were given are unlawful;

d. Whether the "wage assignment demand notices" violate the FDCPA.

e. The responsibility of each Defendant for the illegal collection activities.

55. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

56. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

57. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Statutory damages;

ii. Actual damages, including all amounts collected by means of the "wage assignment demand notices."

iii. Attorney's fees, litigation expenses and costs of suit;

iv. Such other and further relief as the Court deems proper.

**COUNT II – INDIANA WAGE ASSIGNMENT CLAIM**

58. Plaintiff incorporates by reference paragraphs 1-40.

59. This claim is against all Defendants.

60. Because the wage assignments were made in connection with loans with an interest rate in excess of 8%, both the assignments and the underlying loans are void.

**CLASS ALLEGATIONS**

61. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

62. The class consists of (a) all individuals with Indiana addresses (b) who were the subject of a "wage assignment demand notice" (c) sent by Red Cypress Group, Valley Servicing, or Apex Servicing (d) on or after a date beginning 6 years prior to the filing of this action.

63. On information and belief, there are more than 100 members of the class, which is so numerous that joinder of all members is impracticable.

64. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions include:

a. Whether the "wage assignment demand notices" and associated loans are unlawful;

b. Whether the "wage assignment demand notices" violate Indiana law.

c. The responsibility of each Defendant for the illegal collection activities.

65. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

66. Plaintiff will adequately and fairly protect the interests of all members of the class. She has the requisite personal interest in the outcome of this litigation and has no interest antagonistic to any member of the proposed class.

67. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

68. A class action is the superior means of adjudicating this dispute in that:

a. Individual cases are not economically feasible;

b. Class members are unlikely to be aware of their rights, the entire scheme being dependent on concealment of the facts from the class members;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Declaring null and void both the wage assignments and the underlying loans;

ii. Restitution of all amounts collected;

iii. Costs of suit;

iv. Such other or further relief as is proper.

**COUNT III – INDIANA DECEPTIVE CONSUMER SALES ACT – CLASS CLAIM**

69. Plaintiff incorporates by reference paragraphs 1-40.

70. This claim is against all Defendants.

71. Defendants are "suppliers" for purposes of the IDCSA, in that they are entities that are "debt collectors" under the FDCPA.

72. The efforts to collect debts are "consumer transactions" for purposes of the IDCSA. IC 24-5-0.5-2(a)(1)(C) defines "consumer transaction" to include "The collection of or attempt to collect a debt by a debt collector." IC24-5-0.5-2(a)(15) states that "Debt collector has the meaning set forth in 15 U.S.C. 1692a(6)" but "does not include a person admitted to the practice of law in Indiana if the person is acting within the course and scope of the person's practice as an attorney."

73. The conduct set forth above constitute unfair, abusive and deceptive acts in violation of IC 24-5-0.5-3, which provides:

> (a) A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

> (b) Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:
>
> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have. . . .
>
> (7) That the supplier has a sponsorship, approval, or affiliation in such consumer transaction the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have.
>
> (8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false. . . .

74. Plaintiff asserts that it is not necessary to plead or prove an incurable deceptive act to state a claim under Indiana Code § 34-5-0.5-3(20); but to the extent it is necessary to state a claim under § 24-5-0.5-3(20), Plaintiff avers that by trying to collect illegal debts, Defendants engaged in a scheme, device or artifice with intent to defraud, making the deceptive act an "incurable deceptive act".

75. Plaintiff was harmed by the deceptive acts of the Defendants in that her status with her employer was diminished.

76. The violations of the Defendants were willful. The Defendants knew or acted with reckless disregard of the fact that the "wage assignment demand notices" and the underlying debts were illegal.

**CLASS ALLEGATIONS**

77. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

78. The class consists of (a) all individuals with Indiana addresses (b) who were the subject of a "wage assignment demand notice" (c) sent by Red Cypress Group, Valley Servicing, or

Apex Servicing (d) on or after a date beginning 2 years prior to the filing of this action.

79. On information and belief, there are more than 100 members of the class, which is so numerous that joinder of all members is impracticable.

80. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions include:

a. Whether the "wage assignment demand notices" are unlawful;

b. Whether the "wage assignment demand notices" violate the FDCPA and the IDCSA.

c. The responsibility of each Defendant for the illegal collection activities.

81. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

82. Plaintiff will adequately and fairly protect the interests of all members of the class. She has the requisite personal interest in the outcome of this litigation and has no interest antagonistic to any member of the proposed class.

83. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84. A class action is the superior means of adjudicating this dispute in that:

a. Individual cases are not economically feasible;

b. Class members are unlikely to be aware of their rights, the entire scheme being dependent on concealment of the facts from the class members;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Statutory damages pursuant to Indiana Code § 24-5-0.5-4 in the amount of $500 per Defendant if not willful or $1,000 per Defendant if willful;

ii. Actual damages;

iii. Attorney fees, litigation expenses and costs of suit;

iv. Such other or further relief as is proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather A. Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**EXHIBIT INDEX**

Exhibit A - Valley Servicing website

Exhibit B - Indeed Valley Servicing website

Exhibit C - USPS boxholder information for PO Box 31690, Mesa, AZ 85275

Exhibit D - Wage assignment demand notice

Exhibit E - Example of wage assignment demand notice

Exhibit F - Washington Department of Financial Institutions Consumer Alert